# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC,[1] | ) | Case No. 20-12456 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| _____ | ) | |
| | ) | |
| RUBY TUESDAY, INC., | ) | Adv. Case No. _____ |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| 434 KING STREET, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT FOR DECLARATORY RELIEF

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438);  RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and  Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

Plaintiff, Ruby Tuesday, Inc. (the "Debtor"), one of the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), as and for its *Complaint for Declaratory Relief* against 434 King Street, LLC (the "Defendant"), by and through its undersigned counsel of record, alleges as follows:

## SUMMARY OF ACTION

1. The Debtor is the lessee of commercial real property located in Summerville, South Carolina, that operates as a Ruby Tuesday® restaurant (defined herein as the "**Restaurant**").  By the Complaint, the Debtor seeks an abatement of its rental payments under its lease with the Defendant (defined herein as the "**Lease**"), based on the global COVID-19 pandemic and the imposition of governmental regulations, recommendations, or orders related to the COVID-19 pandemic (the "**Government Regulations**") that have had a devastating impact on the Debtor's ability to operate the Restaurant, until such Government Regulations have been lifted and to reflect the extent and duration of such forced governmental closures and limitations on the Debtor's operations.  Such relief is necessary to protect the Debtor's rights under its Lease with the Defendant and to ensure the Debtors' ability to successfully reorganize in these Chapter 11 Cases.

2. The Chapter 11 Cases were commenced during the unprecedented global pandemic caused by the outbreak of the novel coronavirus disease (COVID-19) that has infected millions of people around the world, killed nearly 300,000 people in the United States as of the date of filing of this Complaint, and disrupted daily social and economic life.  Beginning in the early spring of 2020, restaurants throughout the world were negatively affected by the COVID-19 pandemic, many to the point of permanent closure.  The lack of predictability in the spread of the virus coupled with the necessary responses of governments to try and limit exposure by

preventing gatherings has eviscerated the restaurant industry, including the Ruby Tuesday® restaurant chain, whose business model largely depends on providing social environments for people to meet and enjoy dining out.  Government actions such as mandated restaurant closures, mandated mall closures, shelter in place orders, carry-out only orders, reduced hour orders, and social distancing/self-quarantining orders and guidance created a situation whereby the Debtors' revenues dropped so substantially that they could no longer sustain their normal operating costs.  Rental obligations, as a fixed expense, were particularly difficult to manage since they were not reduced in line with revenue deterioration.

3. On March 17, 2020, the COVID-19 pandemic and attendant Government Regulations forced the Debtor to close the Restaurant.  By May 12, 2020, the COVID-19 pandemic continued and, in accordance with the Government Regulations, the Restaurant was only permitted to serve customers on a delivery or carry-out basis.  As of the commencement of the Chapter 11 Cases, the Restaurant was allowed to offer dining room services, but only under strict capacity and other restrictions mandated by the Government Regulations, which continue to affect the Debtor's ability to sustain its operations.

4. The Debtor's obligation to pay rent under the Lease should be abated for the following reasons: (a) the COVID-19 pandemic and related Government Regulations triggered the force majeure provisions of the Lease that expressly relieve the Debtor of its rent obligations; (b) by significantly limiting the Debtor's business operations, the COVID-19 pandemic and related Government Regulations frustrated the fundamental purpose of the Lease; and (c) by significantly limiting the Debtor's business operations, the COVID-19 pandemic and related Government Regulations rendered the Debtor's performance under the Lease impossible and/or impracticable.

5. Based on the foregoing, the Debtor brings this action for a declaratory judgment for abatement of the Debtor's rent payments for the Restaurant from the date that the Government Regulations went into effect until such time as they are lifted, in an amount to be proven at trial.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B) and (O). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

7. Plaintiff, Ruby Tuesday, Inc., is a corporation organized and existing under the laws of the State of Georgia, and is one of the Debtors in the Chapter 11 Cases.

8. Defendant, 434 King Street, LLC, is a limited liability company organized and existing under the laws of the State of South Carolina.

## STATEMENT OF FACTS

**A.    General Background**

9. The Debtors develop, operate, and franchise casual dining restaurants under the Ruby Tuesday® brand. On October 7, 2020 (the "Petition Date"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 26, 2020, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in these Chapter 11 Cases. No trustee or examiner has been appointed in the Chapter 11 Cases.

10.   On October 16, 2020, the Debtors filed their *Motion for Entry of an Order Pursuant to Sections 105(a) and 503(b) of the Bankruptcy Code Abating Rents Under Unexpired Leases of Nonresidential Real Property for Restaurants Affected by Government Regulations* [Dkt. No. 145] (the "**Abatement Motion**").

11.   On December 9, 2020, the Court established procedures relating to the determination of the rent abatement issues in the Chapter 11 Cases by way of a *Scheduling Order Re: Abatement Litigation* (the "**Abatement Procedures**") [Dkt. No. 689].  The Abatement Procedures provide, among other things, that, on or before December 14, 2020, the Debtors shall file complaints to commence the "first round" of adversary proceedings against certain landlord defendants seeking the abatement of rent obligations of one or more of the Debtors, as generally described in the Abatement Motion.  Under the terms of the Abatement Procedures, the Abatement Motion was deemed withdrawn.

12.   This Complaint is brought in accordance with the Abatement Procedures.

**B.   The Lease**

13.   On or about January 15, 2004, the Debtor, as lessee, and Grange S. Cuthbert, III, as predecessor in interest to Defendant, as lessor, entered into a lease (as amended, supplemented or modified, the "**Lease**") of premises located at 1320 North Main Street, Summerville, South Carolina 29483 (the "**Premises**").   The Premises, consisting of 4,658 square feet, are operated by the Debtor as a Ruby Tuesday® restaurant (the "**Restaurant**").

14.   Section 32 of the Lease provides a force majeure provision (the "**Force Majeure Provision**"), as follows:

**32. FORCE MAJEURE**:

Lessor and/or Ruby Tuesday shall be excused for the period of any delay and shall not be deemed in default with respect to the performance of any of the terms, covenants, and conditions of this Lease when prevented from so doing by cause or causes beyond the Lessor's and/or Ruby Tuesday's control, which shall include, without limitation, all labor disputes, governmental regulations or controls, fire or other casualty, inability to obtain any material, services, acts of God, or any other cause, whether similar or dissimilar to the foregoing, not within the control of the Lessor and/or Ruby Tuesday.

15. The principal purpose of the Lease was to allow the Debtor to operate the Restaurant as it operated prior to the COVID-19 pandemic and imposition of the Government Regulations.

**C.  The Government Regulations**

16. The Premises and the Restaurant are subject to the orders of the State of South Carolina, the County of Dorchester, and the City of Summerville. Government Regulations have been issued as a result of the COVID-19 crisis that impair economic activity and directly affect the operation of the Restaurant. The Government Regulations that have been, and that are currently, in effect affecting the Restaurant are as follows:

    a.  On March 13, 2020, the State of South Carolina issued its Executive Order No. 2020-08 declaring a State of Emergency due to COVID-19.[2]

    b.  On March 17, 2020, the State of South Carolina issued its Executive Order No. 2020-10.[3] That Order limited the Debtor's ability to operate the

---

[2] *See* https://governor.sc.gov/sites/default/files/Documents/Executive-Orders/2020-03-13%20FILED%20Executive%20Order%20No.%202020-08%20-%20State%20of%20Emergency%20Due%20to%20Coronavirus%20(COVID-19).pdf, last accessed December 13, 2020.

Restaurant, as it suspended on-premises dining between March 18, 2020 and March 31, 2020.

c. This Order prohibiting on-premises dining, was extended by Executive Order No. 2020-15, entered on March 28, 2020;[4] by Executive Order No. 2020-23, entered on April 12, 2020;[5] and by Executive Order No. 2020-29, entered on April 27, 2020.[6]

d. On May 3, 2020, the State of South Carolina issued its Executive Order No. 2020-31.[7] While this order modified the prior Order that had been continuously extended by now allowing for outdoor dining, this new Order continued to limit the Debtor's ability to operate its business at the Premises, as it continued the prohibition on indoor dine-in consumption.

e. On May 8, 2020, the State of South Carolina issued its Executive Order No. 2020-34.[8] While it modified the prior Order by allowing limited

---

[3] *See* https://governor.sc.gov/sites/default/files/Documents/Executive-Orders/2020-03-17%20FILED%20Executive%20Order%20No.%202020-10%20-%20Directing%20Additional%20Emergency%20Measures%20re%20COVID-19.pdf, last accessed December 13, 2020.

[4] *See* https://governor.sc.gov/sites/default/files/Documents/Executive-Orders/2020-03-28%20FILED%20Executive%20Order%20No.%202020-15%20-%20State%20of%20Emergency%20Due%20to%20COVID-19%20Pandemic.pdf, last accessed December 13, 2020.

[5] *See* https://governor.sc.gov/sites/default/files/Documents/Executive-Orders/2020-04-12%20eFILED%20Executive%20Order%20No.%202020-23%20-%20Third%20State%20of%20Emergency%20Due%20to%20COVID-19%20Pandemic.pdf, last accessed December 13, 2020.

[6] *See* https://governor.sc.gov/sites/default/files/Documents/Executive-Orders/2020-04-27%20FILED%20Executive%20Order%20No.%202020-29%20-%20State%20of%20Emergency%20Due%20to%20COVID-19%20Pandemic%20Response%20%26%20Other%20Measures.pdf, last accessed December 13, 2020.

[7] *See* https://governor.sc.gov/sites/default/files/Documents/Executive-Orders/2020-05-03%20eFILED%20Executive%20Order%20No.%202020-31%20-%20Modification%20of%20Home%20or%20Work%20Order%20%26%20Authorization%20of%20Outdoor%20Dining%20Services.pdf, last accessed December 13, 2020.

[8] *See* https://governor.sc.gov/sites/default/files/Documents/Executive-Orders/2020-05-08%20FILED%20Executive%20Order%20No.%202020-34%20-

        indoor dining, the new Order continued to limit and restrict the Debtor's ability to operate the Restaurant, as it placed restrictions on indoor on-premises dining, in its adherence to the guidelines provided by the South Carolina Restaurant and Lodging Association ("RLA"),[9] the CDC, and the South Carolina Department of Health and Environmental Control ("DHEC").[10]

f.     The guidelines outlined by the RLA and the DHEC include helpful guides for foodservices establishments that relate to emphasizing commitment to cleaning and sanitizing, setting up seating, beverage service, mask/face covering requirements, and providing printable signage to reflect reserved tables, appropriate usage of gloves, etc.

g.     On July 11, 2020, the State of South Carolina issued its Executive Order No. 2020-45.[11] This new Order continued to limit the Debtor's ability to operate the Restaurant, as it limited its ability to sell alcohol after 11:00 p.m.

h.     On August 2, 2020, the State of South Carolina issued its Executive Order No. 2020-50,[12] which in addition to consolidating the prior Executive

---

%20Authorization%20of%20Limited%20Indoor%20Dining%20Services%20%26%20Rescission%20of%20Boating%20Restrictions.pdf, last accessed December 13, 2020.

[9] *See* https://cdn.ymaws.com/www.scrla.org/resource/resmgr/coronavirus/SC_Restaurant_Guidelines_10..pdf, last accessed December 13, 2020.

[10] *See* https://scdhec.gov/food-safety/food-safety-covid-19, last accessed December 13, 2020.

[11] *See* https://governor.sc.gov/sites/default/files/Documents/2020-07-11%20eFILED%20Executive%20Order%20No.%202020-45%20-%20Temporary%20Restrictions%20re%20Alcoholic%20Beverages%20at%20Restaurants%20%26%20Bars.pdf, last accessed December 13, 2020.

[12] *See* https://governor.sc.gov/sites/default/files/Documents/Executive-Orders/2020-08-02%20FILED%20Executive%20Order%20No.%202020-50%20-

        Orders Nos. 2020-10, 2020-31, 2020-34, and 2020-45, also continued to limit the Debtor's ability to conduct its business operations at the Premises. Specifically, this new Order implemented regulations and rules which the Debtor was required to follow in order to conduct its restaurant operations at the subject premises, namely, limiting occupancy to 50%, requiring 6-feet of separation between customers, removing bar area congestion, requiring face masks to be worn, limiting the sale of alcohol, and placing restriction on table spacing, common use condiments, placement of utensils, and more.

i. Specifically, Section 3.A., at Subsection 18, orders that all self-service buffets, food stations, and common-use utensils be discontinued. This limitation restricted and impacted the Debtor's ability to operate its restaurant at this location.

j. While no specific orders were entered by the County of Dorchester that limited the Debtor's operations at the Restaurant, the County defaults to the state-wide Executive Orders, as outlined above, and as such, continues to restrict the Debtor's ability to do business at the restaurant located in its jurisdiction.

k. Similarly, the Town of Summerville, South Carolina, follows and abides by the state-wide Executive Orders, which limited and continue to restrict the Debtor's business operations. While the Town of Summerville has issued its own ordinances related to the COVID-19 pandemic, same have

---

%20Initiating%20Additional%20Emergency%20Measures%20%26%20Consolidating%20Previous%20Orders.pdf, last accessed December 13, 2020.

        been limited to requiring face masks/face coverings to be worn by employees of food-service establishments, as outlined in Town Ordinance 20-1201, issued and entered on December 10, 2020.[13]

    l.     It bears repeating that as of the filing of this Complaint, the State of South Carolina continues to limit the Debtor's ability to operate its Restaurant, located in Summerville.

17.     As outlined above, starting in mid-March 2020, the Government Regulations mandated the full closure of the Restaurant's dining room to all patrons. The Restaurant was only permitted to provide food and non-alcoholic beverages via delivery or take-out. The Restaurant's revenues were significantly impacted by the Governmental Regulations, as the Debtor's business model is nearly fully based on in-house dining, with the historical run rate on delivery and take-out for the Restaurant accounting for less than 11% of total revenue. The shut-down of the dining room to guests necessitated the closure of the Restaurant during this period. The dining room closure of the Restaurant was devastating to the Debtor's business, with an initial revenue loss exceeding 83%.

18.     As outlined above, the Government Regulations were altered to allow for a reopening of the Restaurant's dining room, however, in a significantly limited fashion. To address the changes wrought by the Government Regulations and to comply with such Government Regulations, the Debtor streamlined its menu with an eye towards reducing inventory, operational complexity and labor. However, no bar service at the Restaurant was allowed. In addition, the Garden Bar, which is Ruby Tuesday's signature feature and brand differentiator, could not be offered due to the Government Regulations' prohibition on self-

---

[13] *See* https://www.summervillesc.gov/DocumentCenter/View/3343/Emergency-Ordinance-20-1201, last accessed December 13, 2020.

service dining. As of the filing of this Complaint, the Restaurant is still not permitted to offer a self-service Garden Bar and the operations of the Restaurant remain limited and subject to the Government Regulations.

19. The Government Regulations had, and continue to have, a dramatic negative impact on the Debtor's ability to operate the Restaurant as it had prior to the onset of the COVID-19 pandemic and imposition of the Government Regulations.

20. The COVID-19 pandemic and Government Regulations imposed on the Restaurant's operations were unforeseeable as of the parties' entry into the Lease and were beyond the Debtor's fault, making or control.

21. The Debtor asserts that the COVID-19 pandemic and Government Regulations provide for the Debtor's right to abate rent under the Lease.

22. Upon information and belief, the Defendant disputes the Debtor's right to abate rent under the Lease.

## FIRST CLAIM FOR RELIEF

**(Declaratory Judgment That the Force Majeure Provision Requires That the Rents Be Abated)**

23. The Debtor repeats and realleges the allegations above as if fully set forth herein.

24. The Lease contains the Force Majeure Provision.

25. The Force Majeure Provision covers the following circumstances: "cause or causes beyond the Lessor's and/or Ruby Tuesday's control, which shall include, without limitation, all labor disputes, governmental regulations or controls, fire or other casualty, inability to obtain any material, services, acts of God, or any other cause, whether similar or dissimilar to the foregoing, not within the control of the Lessor and/or Ruby Tuesday."

26.     The State of South Carolina and other local governmental agencies in South Carolina issued the Government Regulations which govern, control and restrict the Restaurant's operations.

27.     The COVID-19 pandemic and Government Regulations were unforeseeable and beyond the Debtor's fault, making or control.

28.     The COVID-19 pandemic and Government Regulations constituted a force majeure event under the Force Majeure Provision of the Lease, excusing the Debtor's nonperformance under the Lease caused by the COVID-19 pandemic and Government Regulations.

29.     As a result, the Debtor is entitled to declaratory judgment for abatement of the Debtor's rent payments for the Restaurant from the date that the Government Regulations went into effect until such time as they are lifted, in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

**(Declaratory Judgment That the Common Law Doctrine of
Frustration of Purpose Requires That the Rents Be Abated)**

30.     The Debtor repeats and realleges the allegations above as if fully set forth herein.

31.     The common law doctrine of frustration of purpose provides that a party's contractual obligations may be excused when the principal purpose of the contract is substantially frustrated without fault by the occurrence of an event, the non-occurrence of which was a basic assumption on which the contract was made.

32.     The State of South Carolina and other local governmental agencies in South Carolina issued the Government Regulations which govern, control and restrict the Restaurant's operations.

33. The COVID-19 pandemic and Government Regulations were unforeseeable and beyond the Debtor's fault, making or control.

34. The COVID-19 pandemic and Government Regulations frustrated the principal purpose of the Lease, excusing the Debtor's nonperformance caused by the COVID-19 pandemic and Government Regulations.

35. As a result, the Debtor is entitled to declaratory judgment for abatement of the Debtor's rent payments for the Restaurant from the date that the Government Regulations went into effect until such time as they are lifted, in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF

**(Declaratory Judgment That the Common Law Doctrine of Impossibility and/or Impracticability of Performance Requires That the Rents Be Abated)**

36. The Debtor repeats and realleges the allegations above as if fully set forth herein.

37. The common law doctrine of impossibility and/or impracticability of performance provides that a failure to perform contract obligations is excused where, after a contract is made, a party's performance is made impossible or impracticable without that party's fault by the occurrence of an event, the non-occurrence of which was a basic assumption on which the contract was made.

38. The State of South Carolina and other local governmental agencies in South Carolina issued the Government Regulations which govern, control and restrict the Restaurant's operations.

39. The COVID-19 pandemic and Government Regulations were unforeseeable and beyond the Debtor's fault, making or control.

40. The COVID-19 pandemic and Government Regulations made the Debtor's performance under the Lease impossible and/or impracticable, excusing the Debtor's

nonperformance under the Lease caused by the COVID-19 pandemic and Government Regulations.

41. As a result, the Debtor is entitled to declaratory judgment for abatement of the Debtor's rent payments for the Restaurant from the date that the Government Regulations went into effect until such time as they are lifted, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment as follows:

1. On all Claims for Relief, issuing a declaratory judgment that the Debtor's rent payments for the Restaurant are abated from the date that the Government Regulations went into effect until such time as they are lifted, in an amount to be proven at trial; and

2. Granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
December 14, 2020

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Richard M. Pachulski (CA Bar No. 90073)
Malhar S. Pagay (CA Bar No. 189289)
James E. O'Neill (Bar No. 4042)
Victoria A. Newmark (CA Bar No. 183581)
919 Market Street, 17th Floor
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile   (302) 652-4400
Email:  rpachulski@pszjlaw.com
         mpagay@pszjlaw.com
         joneill@pszjlaw.com
         vnewmark@pszjlaw.com

*Counsel to the Plaintiff*